---

(7 App. Div. 321)

### GALLAGHER v. McMULLEN et al.

(Supreme Court, Appellate Division, First Department. June 29, 1896.)

TRIAL—JUDGE'S CHARGE—TIME OF MAKING.
    The trial judge, before he addressed the jury, asked counsel to hand up whatever requests to charge they might desire to present in writing. At the conclusion of the charge defendant's counsel requested certain additional instructions. *Held*, that the request was not unseasonably made.

Appeal from trial term, New York county.

Action by Lizzie Gallagher, administratrix, against Arthur Mc-Mullen and others, to recover damages for the death of plaintiff's intestate alleged to have been caused by the negligence of defendants. From a judgment entered on a verdict in favor of plaintiff for $2,680 and costs, and from an order denying a motion for a new trial, defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Herbert C. Smyth, for appellants.
E. C. Bailey, for respondent.

PATTERSON, J.: This is an appeal from a judgment entered upon a verdict in favor of the plaintiff in an action to recover damages for alleged negligence of the defendants or their servants, causing the death of the plaintiff's intestate. The proof showed that the plaintiff's intestate was engaged at work as a laborer, employed by the defendants, in the interior of a caisson placed in the Harlem river, and that on the 19th day of May, 1895, he was at work with others in that caisson, beneath the bed of the river. During the progress of that work it became necessary to remove by blasting an iron cylinder filled in with concrete, which had formed one of the piers of an old bridge. The blast was discharged, and a fragment of the cylinder was thrown by the explosion a distance of some 20 feet or more, and struck and killed the plaintiff's intestate. It appeared in evidence that the blast was not covered by logs fastened upon it to prevent the scattering of missiles or projectiles from the material that was being removed, and it was claimed on the part of the plaintiff, that that which constituted the negligence of the defendants or their servants was the failure to provide the safeguard or security which should have been furnished by logs placed over and upon the blast prior to its being discharged. There was conflicting evidence as to the necessity or propriety of such means of prevention of accident, and also upon the subject of the effect of such a precaution, even if it had been adopted; it being contended by the defendants that, even had the device referred to been used, it would only have resulted in preventing the fragments of material dislodged by the explosion flying upward, and not laterally, it being quite clear that the missile which killed the plaintiff's intestate was thrown laterally, and not upward. Whether the defendants were negligent in not providing a covering for the blast of the particular description referred to was made a principal issue on the trial. The learned judge who presided left that issue to the jury in a very clear and careful statement. He left it to them to say whether the defendants, in the exercise of reasonable care and prudence, ought to have provided covering for the blast of the kind and description claimed by the plaintiff to have been the only reasonable and proper one under the circumstances of the case. The omission of the defendants or their servants to do this was, therefore, plainly presented as a ground of the alleged negligence.

But it further appeared in the proofs that the plaintiff's intestate was not ignorant of what was necessary and proper in the preparation and firing of blasts in underground work. He had been for years employed in making excavations under the beds of rivers, and he had been for three days engaged at work in this caisson, where much blasting was done daily; and it appeared by the testimony of a witness that the plaintiff's intestate had some direct connection either with the preparation or the firing of the particular blast the explosion of which caused his death. The wit-

ness Crowley says that the plaintiff's intestate assisted him in attaching or arranging the wires connected with the battery which discharged the blast.   There was enough in the case to allow the defendants to go to the jury on the question of the knowledge of the plaintiff's intestate of the insecure condition of the blast, if it were insecure, and to authorize the claim that with such knowledge the plaintiff's intestate assumed the risk to which he was exposed by reason of such insecurity.   At the close of the remarks of the learned judge in charging the jury the defendants' counsel requested the court to instruct them that: "If the plaintiff knew, or by the use of ordinary observation ought to have known, of the absence of any appliance to cover the blast, that his continuing in the employment with such knowledge does not entitle him to recover in this action, the risk incurred being one assumed by him." Upon the proofs and under the charge of the learned judge as to the imputed negligence, the defendants were certainly entitled to this instruction if it were asked in time.   But the court declined to pass upon it, saying: "I cannot entertain it.   I have given due deliberation to all these requests, and I will not entertain any request which should have been handed up before I made my charge." It appears that before the learned judge addressed the jury he had asked counsel to hand up whatever requests to charge they might desire to present; whereupon counsel on both sides handed up certain requests in writing.   Among those handed up by the defendants there was none of the purport of that which was specifically asked at the conclusion of the charge to the jury.   It was error to refuse to entertain the request, and the instruction should have been given to the jury.   The only ground upon which the learned judge refused was that it was not asked in time.   While it was eminently proper that such requests as counsel desired should have been presented to the court for examination before the final submission to the jury, yet there is no rule of practice which absolutely precludes counsel from asking the court to give additional instructions after it has addressed the jury.   That there is sometimes a great abuse of the privilege of counsel respecting the submission of requests to charge is well known, and it is the duty and the disposition of appellate courts to check and rebuke efforts to set traps for the court by requests to charge unseasonably made. But in this case the instruction asked for was a most material one, and was evidently presented merely because the court had inadvertently omitted to charge upon a subject which the counsel had a right to expect would have been alluded to without any previous request.   It was not out of due season, or at all unreasonable, that the attention of the court should be called to the particular subject-matter of that single request.   The right of counsel to present requests to charge was considered in the case of O'Neil v. Railroad Co., 129 N. Y. 130, 29 N. E. 84.   In the opinion of the court in that case reference was made to Chapman v. McCormick, 86 N. Y. 479, where it was held that the denial of the legal right of counsel on the trial of an action to submit propositions bearing upon the action is the subject of exception; and it is that rule

which the appellant seeks to apply here.    In the O'Neil Case that rule was reiterated, but was held to be inapplicable to that particular case, in which it appeared that before the judge began his charge to the jury requests of counsel were handed to him, and that he either charged or refused to charge such requests.    Upon the conclusion of his remarks to the jury counsel for one of the defendants made further requests, and the judge asked him if he had any others.    He then did make other requests, which the judge charged, and then apparently the counsel was satisfied, and took his seat.    Counsel for the opposite party then made requests to charge which the court acceded to.    Then the counsel for the defendant again proceeded to make further requests, and the court declined to entertain them; and it was held that the judge did not abuse his discretion, for the reason that the counsel for the defendant had had full opportunity to make all his requests, and had made them so far as he deemed them important, both before and after the charge was made; and whether after that he should be permitted to prolong the trial, and still further vex the court with his requests, rested in the court's discretion.    The O'Neil Case is not an authority for the contention that the right of counsel to submit requests to charge is absolutely within the control of the judge presiding at the trial, but only for the proposition that, where there is an abuse by counsel of his right, it is within the power and discretion of the court to refuse to hear him. There was certainly, in this case, no attempt either to vex the court, to prolong the proceeding, or to get before the jury improper or immaterial matter.    It was a vital question in the case; one which should have been submitted; and for the error in refusing to present it to the jury the judgment must be reversed, and a new trial granted, with costs to the appellants to abide the event. All concur: